IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBERT MCFARLAND,

                Plaintiff,

v.                                               CIVIL ACTION NO.   2:15-cv-12922

JOE WIMMER, et al.,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court are a Motion to Dismiss filed by defendants David Miller, Charles Legg, and Margaret Clifford [ECF No. 32], a Motion to Dismiss filed by defendant Daniel Hahn [ECF No. 41], and a Motion to Dismiss filed by defendants Nancy Jackson, Tim Perkins, William Sutphin, and Joe Wimmer [ECF No. 45]. By Standing Order, this matter is referred to the Honorable Dwane L. Tinsley, United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). For reasons appearing to the Court, it is hereby **ORDERED** that the referral of this matter to the Magistrate Judge is **WITHDRAWN**.

I.    The Plaintiff's Allegations and the Defendants' Motions to Dismiss.

On September 3, 2015, the plaintiff filed his *pro se* Complaint alleging violations of his rights under the Eighth and Fourteenth Amendments to the United

States Constitution and Article III, § 5 of the West Virginia Constitution, as well as state law claims of assault and battery, arising out of a use of force against him on March 29, 2014.[1] The plaintiff alleges that he was walking in the dayroom of Stuart Hall, side one, at the Mount Olive Correctional Complex ("MOCC"), when other inmates began clapping because defendant Nancy Jackson was relieved from her assigned post on that unit. Compl. ¶¶ 16-18 [ECF No. 2]. The plaintiff denies that he participated in the clapping. *Id.* ¶ 19.

The plaintiff further alleges that, approximately 10-15 minutes later, defendants Joe Wimmer, Tim Perkins, David Miller, Charles Legg, William Sutphin, Margaret Clifford, and Daniel Hahn entered the unit and gave verbal orders for the inmates to "lock down." *Id.* ¶ 20. The plaintiff verbally expressed his displeasure with this order, but states that he was complying with it. *Id.* ¶ 22. The plaintiff further alleges, however, that notwithstanding his attempted compliance, defendant Wimmer, placed him in a rear choke hold and arm bar, without warning, and then slammed the plaintiff's face into a cell door and then slammed his face and chest on the concrete floor. *Id.* ¶¶ 23, 26. The plaintiff denies that he was a threat to himself, other inmates, staff or state property, and that he never resisted. *Id.* ¶¶ 24, 25, 27. The plaintiff further alleges that several more minutes passed before he was placed in mechanical restraints. *Id.* ¶ 29.

---

[1] The Complaint initially named two of the defendants as Jane Doe I and John Doe I. However, on April 13, 2017, United States Magistrate Judge Dwane L. Tinsley granted the plaintiff's Motion to Amend [ECF No. 25] and permitted the substitution of Nancy Jackson and Daniel Hahn in place of the John Doe defendants. Accordingly, the Court will treat the allegations against Jane Doe I and John Doe I contained in the Complaint to be made against Nancy Jackson and Daniel Hahn, respectively.

2

The plaintiff alleges that defendants Wimmer, Perkins and Sutphin were the officers who used physical force against him, and that these defendants repeatedly yelled at him to "fight back" and "now run your fuck'n mouth" in an effort to provoke and belittle him. *Id.* ¶ 35. He further alleges that the remaining defendants, Miller, Legg, Clifford, Jackson and Hahn, had a realistic opportunity to intervene to prevent or stop the beating, but failed to do so. *Id.* ¶¶ 32, 33. The plaintiff contends that, as a result of the defendants' conduct, he suffered, and continues to suffer from, swelling to his face and jaw, breathing problems, and sharp pain and limited movement in the right shoulder and arm. *Id.* ¶ 34. He seeks declaratory and injunctive relief, as well as monetary damages from the defendants, who are sued in both their individual and official capacities.

On April 28, 2017, defendants David Miller, Charles Legg, and Margaret Clifford, by counsel, filed a Motion to Dismiss [ECF No. 32] and a Memorandum of Law in support thereof [ECF No. 33], asserting that the plaintiff failed to exhaust the available administrative remedies prior to filing his Complaint, that these defendants are entitled to qualified immunity on the plaintiff's claims against them, and that the Complaint fails to state a claim upon which relief can be granted. On June 15, 2017, the plaintiff filed a Response to the Motion to Dismiss filed by defendants Miller, Legg, and Clifford [ECF No. 38], along with a Declaration [ECF No. 39] and a Memorandum of Law [ECF No. 40] disputing each of the defendants' grounds for dismissal. On June 26, 2017, defendants Miller, Legg, and Clifford filed a Reply [ECF No. 43].

On June 26, 2017, defendant Daniel Hahn filed a Motion to Dismiss [ECF No. 41] and a Memorandum of Law in support thereof [ECF No. 42], which also asserts that the plaintiff failed to exhaust the available administrative remedies prior to filing his Complaint, that Hahn is entitled to qualified immunity on the plaintiff's claims against him, and that the Complaint fails to state a claim upon which relief can be granted. Despite being given additional time to do so, the plaintiff has not responded to this motion.

On July 6, 2017, defendants Nancy Jackson, Tim Perkins, William Sutphin and Joe Wimmer filed a Motion to Dismiss [ECF No. 45], which similarly asserts that the plaintiff failed to exhaust his administrative remedies, that these defendants are entitled to qualified immunity on the plaintiff's claims against them, and that the Complaint fails to state a claim upon which relief can be granted. On July 24, 2017, the plaintiff filed a Response to this Motion to Dismiss [ECF No. 48] and a Memorandum of Law [ECF No. 49], disputing the defendants' grounds for relief. On August 1, 2017, defendants Jackson, Perkins, Sutphin and Wimmer filed a Reply [ECF No. 52]. The specific arguments of the parties will be discussed as necessary in section III.

## II. Standard of Review

The defendants have filed Motions to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. However, the plaintiff has filed a Declaration addressing the issue of exhaustion of administrative remedies and attaching one of the prison grievances he filed with respect to the incident that is the subject of his

4

Complaint. Under Federal Rule of Civil Procedure 12(d), "if, on motion under 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Accordingly, the court will construe the defendants' motions herein as motions for summary judgment under Rule 56.

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party must offer some concrete evidence from which a reasonable factfinder could find in the nonmovant's favor. *Anderson*, 477 U.S. at 252.

### III. Discussion

The threshold issue before the Court is whether the plaintiff properly exhausted the available administrative remedies prior to filing his Complaint. A prison inmate's failure to exhaust administrative remedies is an affirmative defense, and a failure to exhaust administrative remedies warrants judgment as a matter of law for the defendants. *Jones v. Bock*, 549 U.S. 199, 212 (2007). All of the defendants

have raised the failure to exhaust administrative remedies as a ground for dismissal herein. While the exhaustion issue is not jurisdictional, the district court must resolve disputes regarding exhaustion prior to any consideration of the merits of the underlying claims. *See Messa v. Goord*, 652 F.2d 305, 308–09 (2d Cir. 2011).

The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Additionally, the exhaustion requirement applies regardless of the relief sought or offered through the administrative process. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Accordingly, this exhaustion requirement applies to the plaintiff's federal constitutional claims.

In addition, "the PLRA['s] exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires that the inmate follow all of the prison's grievance procedures so that "the prison grievance system is given a fair opportunity to consider the grievance." *Id.* at 95. "[P]roper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

merits).'" *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

West Virginia also has its own Prison Litigation Reform Act (the "WVPLRA"), found in W. Va. Code § 25-1A-2. Like the PLRA, the WVPLRA "requires inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W.Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life. . . . An ordinary administrative remedy includes, but is not limited to, . . . health care . . . [and] staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

§ 25-1A-2(d). To the extent that the plaintiff has also filed state common law claims of assault and battery, this exhaustion requirement would apply to those claims.

In the instant case, despite the plaintiff's assertion in his Complaint that he exhausted the available administrative remedies, all of the defendants assert that he

7

failed to do so properly. Specifically, the defendants collectively assert that the two grievances the plaintiff filed with respect to this incident named only defendant Wimmer, specifically, and addressed only a use of force by him. Most notably, the grievances did not mention the failure of any other correctional officers to intervene to stop the use of force by Wimmer or anyone else. Moreover, regardless of the details addressed in the plaintiff's grievances, the defendants further assert that such grievances were not timely filed under the West Virginia Division of Correction's ("WVDOC") grievance procedures.

To evaluate the exhaustion issue herein, I turn first to the relevant procedures for submitting and appealing grievances at WVDOC facilities, such as MOCC. Then, I will evaluate each relevant grievance filed by the plaintiff to determine if it was submitted and fully appealed in accordance with such grievance procedures.

### a. MOCC Grievance Procedures

A review of the West Virginia Code of Rules in effect on March 29, 2014 reveals the following provisions regarding inmate grievance procedures at MOCC. First, the West Virginia Code of Rules expressly states that proper exhaustion requires an inmate to comply with all procedures set out in the inmate grievance procedure. "Any inmate who fails to fully and properly comply with the provisions set forth in this Rule shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies." W. Va. Code R. § 90-9-3.4.

To initiate the grievance process, an inmate is required to file his grievance with the Unit Manager within fifteen (15) days of the subject occurrence. W. Va. Code R. § 90-9-4.1. The Unit Manager is required to determine (a) whether the grievance was filed in a timely manner; (b) whether the grievance contains excessive pages; (c) whether the grievance is not submitted in the proper format; and (d) whether the grievance seeks to discuss matters that were previously addressed in a prior grievance. W. Va. Code R. § 90-9-4.4. If the Unit Manager determines that any of these four defects are present, he must reject the grievance. *Id.* The inmate may correct procedural deficiencies within five (5) days of rejection only if the deficiency is due to excessive pages or improper formatting. *Id.* While an inmate may appeal a rejection, such an appeal concerns only the Unit Manager's reason for rejection and does not reach the merits of the grievance. *Id.* If a grievance is properly filed, the Unit Manager is required to respond within five (5) days. W. Va. Code R. § 90-9-4.5. If the Unit Manager fails to respond in that time frame, the inmate may treat the non-response as a denial of the grievance and may proceed to appeal the grievance to the Warden/Administrator. *Id.*

Once the inmate receives a response from the Unit Manager on the merits, the inmate has five (5) days to appeal that response to the Warden/Administrator. W. Va. Code R. § 90-9-5.1. On appeal, the Warden/Administrator is required to determine (a) whether the grievance was filed in a timely manner; (b) whether the grievance contains excessive pages; (c) whether the grievance is not submitted in the proper format; and (d) whether the grievance seeks to discuss matters that were previously

addressed in a prior grievance. W. Va. Code R. § 5.3. If the Warden/Administrator determines any of those four defects is present, he must reject the appeal. *Id.* If the grievance is properly appealed, the Warden/Administrator is required to respond to the appeal within five (5) days. W. Va. Code R. § 90-9-5.4. A grievance that is not properly submitted on appeal to the Warden/Administrator must be rejected. *Id.*

Once the inmate receives a response from the Warden/Administrator on the merits (or the Warden/Administrator has not responded in five (5) days as required), the inmate has five (5) days to appeal the Warden/Administrator's decision to the Commissioner. W. Va. Code R. § 90-9-6.1. Appeals to the Commissioner must contain exactly one grievance per envelope. *Id.* The Commissioner is also required to determine (a) whether the grievance was filed in a timely manner; (b) whether the grievance contains excessive pages; (c) whether the grievance is not submitted in the proper format; and (d) whether the grievance seeks to discuss matters that were previously addressed in a prior grievance. W. Va. Code R. § 90-9-6.3. If the Commissioner determines any of those four defects is present, he must reject the appeal. *Id.* If the grievance is properly appealed from the Warden/Administrator, the Commissioner is required to respond to the appeal within ten (10) days. W. Va. Code R. § 90-9-6.4. A grievance that is not properly submitted on appeal to the Warden/Administrator must be rejected. *Id.* "A rejected grievance *does not exhaust the grievance process* or that step of the process." *Id.* (emphasis added)

### b. The Plaintiff's Declaration and Relevant Grievances.

*Grievance No. 14-MOCC-O-58*

Exhibit 1 to the plaintiff's Complaint includes several copies of Grievance No. 14-MOCC-O-58, which the plaintiff filed on September 15, 2014. Compl. Ex. 1 [ECF No. 2-1]. That grievance addresses the use of force against the plaintiff on March 29, 2014, and requests "proper medical examination" and a "head scan." *Id.* It appears that the plaintiff filed an incomplete copy of the grievance, as the nature of the grievance section states that there is an attachment, which has not been provided to the court.

Notwithstanding the lack of the attachment, it is evident from the face of the grievance that, although it was accepted for review concerning the proper procedure for obtaining medical treatment, the Warden found that "[t]he timeframe for raising an issue relating to a use of force incident has passed." *Id.* at 2.

*Grievance No. 14-MOCC-Oak-35*

In response to the Motion to Dismiss filed by defendants Clifford, Legg, and Miller, the plaintiff filed a Declaration in Opposition [ECF No. 39], to which he attached Grievance No. 14-MOCC-Oak-35 [ECF No. 39-1]. That grievance, which was filed on June 11, 2014, also concerns the March 29, 2014 use of force that is the subject of the plaintiff's Complaint. *Id.* at 2.

The grievance specifically addressed the force used against the plaintiff by Sgt. Wimmer and asserts that at least one other "C.O.," who is not identified, used physical force against the plaintiff and took him to the ground, during which the

11

plaintiff's face hit the door and "slammed off the floor." *Id.* The grievance also addresses additional force used against the plaintiff as they were handcuffing him and asserts that such physical force was "not necessary." *Id.* The grievance does not mention that any other correctional officers were present and failed to intervene. The grievance requests "a proper investigation." *Id.* at 1. This second grievance, while filed earlier than Grievance No. 14-MOCC-O-58, was also filed outside the 15-day timeframe required by the grievance procedures, and it appears to have been rejected at all levels, at least in part, for its untimeliness. *Id.* at 1.

### *The plaintiff's Declaration*

The plaintiff's Declaration asserts that, to the extent that the defendants are relying upon the grievance process set forth in the Code of State Rules, the plaintiff was unaware of the Code of State Rules and the 15-day time limit for filing grievances. Decl. in Opp'n ¶¶ 2–4 [ECF No. 39]. The Declaration further asserts that, immediately following the incident alleged in the Complaint, the plaintiff was placed in disciplinary segregation for approximately 60 days and did not have access to the law library. *Id.* ¶¶ 5–6.

The plaintiff's Declaration further states that, when the plaintiff was released from segregation, he went to the law library and spoke to an inmate legal assistant about the administration's unwillingness to investigate the assault and was told to file a grievance. *Id.* ¶ 9. That resulted in his filing of Grievance No. 14-MOCC-Oak-35 on June 11, 2014. *Id.* ¶ 10. Finally, the plaintiff's Declaration asserts that the plaintiff was suffering from "severe headaches, dizziness, and other concussion-

related symptoms" throughout his time in segregation and for months thereafter; therefore, he filed Grievance No. 14-MOCC-O-58 on September 15, 2014, but received no remedy. *Id.* ¶¶ 8, 11.

The plaintiff seemingly admits that his grievances were not timely filed. Nevertheless, he claims ignorance of the deadlines for filing grievances and further contends that he could not comply with the same because he was in segregation. The plaintiff's assertion that he was unaware of the 15-day deadline for timely filing a grievance, however, is not a valid basis to excuse his failure to properly exhaust his administrative remedies. While inmates may not be provided with a copy of the Code of State Rules, as noted by defendants Miller, Legg, and Clifford in their Reply briefs, these same steps and timeframes for filing of grievances and appeals are set forth in the Inmate Handbook, which is provided to inmates and with which they are expected to comply. Reply of Defs. David Miller, Charles Legg, and Maragret Clifford, 3–4 [ECF No. 43].

Additionally, as noted in the Reply filed by defendants Jackson, Perkins, Sutphin, and Wimmer, to the extent that the plaintiff may be asserting that the deadline for filing a grievance with respect to this incident should be tolled until he was released from segregation, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). While the plaintiff claims that he did not have access to the law library during his placement in segregation, he does not assert that he did not have access to the grievance procedures.

Based upon the evidence of record, I **FIND** that both grievances filed by the plaintiff with respect to the use of force against him on March 29, 2014 were untimely and, thus, the plaintiff did not properly exhaust his administrative remedies with respect to the claims in his Complaint by way of either Grievance Nos. 14-MOCC-Oak-35 or 14-MOCC-O-58.

IV. **Conclusion**

Based upon all of the evidence of record, I **FIND** that the plaintiff failed to exhaust his administrative remedies regarding the use of force against him on March 29, 2014, which is the basis for the claims in his Complaint. Accordingly, it is hereby **ORDERED** that the defendants' Motions to Dismiss [ECF Nos. 32, 41 and 45] are **GRANTED**.[2]

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 5, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[2] In light of the finding that the plaintiff failed to exhaust his administrative remedies, I find it unnecessary to address the defendants' other grounds for dismissal of the Complaint.

14